RECEIVED BY MAIL

FEB 1 8 2025

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS. MINNESOTA

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Civil Action NO: 0:24-CV-04279-ECT-DLM

James D. Wren,
      Plaintiff

Plaintiff Reply Memorandum
of Law in Support of
Complaint for Constitutional
Violation of a Civil Suit Under 42
U.S.C. §1983, 42 U.S.C §1985 (3)
Fourth, Eighth, And Fourteenth Amendment

V.

Minneapolis Police Department,
Torborg Nicholas J.
Multiple John Doe's (Names Unknown),
Sued in their individual and official capacities
      Defendants.

JURY TRIAL DEMANDED
**Yes**
Under  FRCP 38(b)

### INTRODUTION

1.  Plaintiff James D. Wren submits this memorandum to respond to arguments and assertions contained in Defendants answer to complaint for constitutional violation of a civil suit under 42 U.S.C §1983, 42 U.S.C §1985 (3) Fourth, Eighth, and Fourteenth Amendments.

### FACTS

2.  On June 10th 2019 around 2:17 am until approximately 4:50am James D. Wren was in the custody of the Minneapolis Police Department. While in the custody of the Minneapolis Police Department James D. Wren was in handcuffs the entire time. James D Wren was on camera from MPD officer Justin Young BWC until James D. Wren was escorted to room 108 located downtown Minneapolis in the city hall building before being escorted to the Hennepin County Jail downtown Minneapolis Minnesota where the handcuffs where removed from plaintiff wrist around 5:10 am.

1

James D. Wren



SCANNED
FEB 1 8 2025
U.S. DISTRICT COURT MPLS

3.   It's a fact that on June 10, 2019 while James D. Wren was in room 108 plaintiff was handcuffed and the defendants failed to come and do a wellness check on plaintiff. Violating plaintiff federal civil rights.

4.   James D. Wren was in the custody of Minneapolis Police Department on June 10, 2019, James D. Wren was assaulted while in handcuffs by the defendants while in MPD custody in room 108 located in the city hall building down town Minneapolis Minnesota. The MPD knew its officers including Nicholas J. Torborg were applying force to the back and neck of prong (lying on his stomach) plaintiff despite the known, appreciated, and obvious risk of causing serious injury or death from positional asphyxia none of defendants intervene to stop the john does and defendant.

5.   June 10, 2019 Sammy Cage was in the custody of the Minneapolis Polices Department in the city hall building located down town Minneapolis. Sammy cage was taking into custody with a loaded firearm on his person. Sammy Cage asked defendants to take his handcuffs off of him and defendants removed the handcuffs off of Sammy Cage.

6.   On June 10, 2019 Nicholas J. Torborg and the John Does/ defendants either engaged in defendants misuse of their authority with unreasonable and excessive use of force and did not help the plaintiff or none of defendants wrote a report on the defendant's behavior when officers are required to self-report any prohibited conduct.

7.   Plaintiff was injured on June 10, 2019 physically and still goes to physical therapy for his injuries (please see exhibits) plaintiff still has a lot of pain in his neck and back area where a 250 pound plus officer kneeled on his neck and back area while in the prone position against police policy and bending plaintiff knee back so far it popped out of place and causes plaintiff great pain, was cruel and unusual punishment violating the Eighth Amendment of the US Constitution.

8.   Plaintiff suffers from emotional distress because of the actions of the defendants who work for the MPD who violations fall under 42 U.S.C §1983, 42 U.S.C §1985 (3) the Fourth, Eighth, and Fourteenth Amendment of the US Constitution.

2

James D. Wren

9.   All incident is on Justin Young BWC, room 108 cameras, Nicholas J. Torborg BWC and all john does BWC, in cloud-storage, known as Evidence.com.

10.   Plaintiff is requesting that the Minneapolis Police Department turn over all john does identity's immediately so plaintiff can properly add the individuals to plaintiff law suit, to see if any of the john does have previous civil right law suits, discipline for misconduct or any citizen complaints lodged against them.

11.   Plaintiff is requesting that the Minneapolis Police Department turn over all video and audio pertaining to this civil complaint so the truth of all events can be seen by the Honorable Judge and the public. Because the MPD have it in a library of digital evidence on its cloud-storage site for body-worn cameras (BWC) recordings, known as Evidence.com, also under the Freedom of Information Act and the privacy Act of 1974, 5 U.S.C§§ 552, 552A.

12.   Plaintiff complaint has merit the MN Dept. of Human Rights (DHR) April 27,2022 investigation and the Department of Justice (DOJ) investigations on the MPD has found evidence of corruption, discrimination against Blacks and Native Americans, misuse of authority and lack of accountability. Like in the Robert Brooks case who was hand cuffed while assaulted out of New York this assault and excessive force was caught on camera, like George Floyd case out of Minneapolis Minnesota who MPD officers kneeled on his neck and back area for over 8 minutes while he was handcuffed and lay on his stomach in the prone position this excessive force case was caught on camera if the courts hold the MPD accountable and make the MPD give up these videos that plaintiff is requesting then I James D. Wren Plaintiff will be able to hold the MPD and defendants accountable for what was done to plaintiff while in handcuffs for hours and laying on plaintiff stomach in the prone position while getting assaulted and all of this was on camera and can quickly be proven or not the MPD has a model Deny and Delay but its been over 5 years since plaintiff, his attorneys, self defense experts and private investigators have been trying to get these videos. (please see plaintiff affidavit it's an exhibit in compliant).

13.   In total, the city has paid out over 70,000,000 in the last two decades alone as a result of the unconstitutional use of force by the MPD officers.

14.   MPD's policies, practices and customs, along with its longstanding failure to discipline offending officers, have led to a pattern and practice of excessive force by MPD officers.

3

James D. Wren

15. Instances of misconduct, according to the DHR report, are "not properly investigated, not timely addressed, and officers are not consistently held accountable" even when BWC evidence or other objective evidence contradicts an officer's use-of-force reporting.

16. The DHR concluded that MPD officers "use higher rates of more severe force against black individuals than white individuals in similar circumstances" and the "race is likely the reason"

17. This explains why defendants violated the civil rights of plaintiff James D. Wren because defendants knew the city would cover for them and not cooperate with a board investigation and give up the BWC footage or the footage from room 108 in the city hall building, unless an Honorable Judge say so.

18. The DHR also noted that MPD officers were almost Twice as likely to use neck restraint against black individuals than white individuals when confronted with similar situations.

19. Minneapolis Mayor Jacob Frey called the DHR's findings "repugnant, at times horrific and claimed he was outraged".

20. On September 9, 2010 David Smith a black man was handcuffed behind his back put in the prone position for 4-1/2 minutes with MPD officer Timothy Gorman kneeing on smith's back while MPD officer straddling his thigh/buttocks region until David Smith showed no sign of life.

21. The Smith incident was a clear example of excessive force against a black man Gorman kneed on Smith's back while smith was handcuffed and fully controlled. No reasonable officer could believe that the use of such force was objectively reasonable.

22. Like in the Smith incident plaintiff was handcuffed, was put in the prone position, and was fully controlled by defendants, no reasonable officer could believe that the use of such force was objectively reasonable to do too plaintiff.

23. MPD policy 5-311 allowed officers to employ "neck restraint" on subjects, defining such restraints as "non-deadly force" despite their obvious risks.

24. MPD trained officers that such a restraint was "non-deadly force" even though it carried with it a reasonable likelihood of death or serious bodily harm.

4

James D. Wren

25. At no point in time did plaintiff James D. Wren pose an immediate threat to the defendants/officers.

26. BWC from defendants and video from room 108 will show that plaintiff was not resisting and even asked the defendants "why are yall doing this to me all I wanted was to get the handcuffs removed" while being placed In hobbles. Hobbles is a device limiting a person's motion by tethering plaintiff legs together and securing them to his waist.

27. Defendants carried James D. Wren out of room 108 by plaintiff arms that plaintiff said he could not feel any more while other defendants carried plaintiff by his feet.

28. Under MPD policy 5-316 then in effect, use of a hobble was appropriate only where arrestees were "combative" and "pose[d] a threat to themselves, officers, or others".

29. None were true of the subdued, prone, and handcuffed plaintiff use of the hobble violated policy and was objectively unreasonable, as Wren remained handcuffed and not resisting.

30. Wren never presented an immediate threat to the safety of officers or others from the time plaintiff first encounter defendants on June 10, 2019 through his booking at the Hennepin County Jail that early morning.

31. Defendants nowhere reported that, while handcuffed for hours, or while in the prone position did a defendant (name unknown) kneel on plaintiff back and neck then place plaintiff in hobbles.

32. Defendants actions while under the color of law as MPD officers on June 10, 2019 deprived plaintiff James D. Wren of his constitutional rights specifically, the right to be free from an unreasonable seizure, which includes the right to be free from the use of unreasonable force by a police officer.

James D. Wren

## James D. Wren Injuries

33. Wren was injured as a result of the use of excessive force against him on June 10, 2019

34. Wren anxiety and changes in depression has increased as a result of June 10, 2019, hydroxyzine was prescribed.

35. Wren has back, neck, and right knee problems as a result of the use of excessive force by the MPD and still goes to physical therapy for treatment.

36. Wren already was diagnosed with post-traumatic stress disorder (PTSD) after incident on June 10, 2019 its symptoms are worst.

37. Wren continues to be traumatized by the actions of defendant's treatment and torture every June 10th because June 10th is plaintiff birthday so every birthday plaintiff has flashbacks of what the defendants done to him and goes into a deep depression, has difficulty sleeping and experiences nightmares when he finally does go to sleep.

38. The United Nations Convention Against Torture and other Cruel Inhuman, or Degrading Treatment or Punishment defines the word "torture" to mean "an extreme form of cruel and inhuman punishment committed under the color of law." The convention "allows for no circumstances or emergencies where torture would be permitted.

39. Defendants torture Wren by subjecting Wren to stay in handcuffs for over 2 hours, by assaulting Wren while he was in handcuffs, by kneeling on Wren's back and neck are while he lay in the prone position, and by placing the hobbles on Wren and carrying Wren out like cattle which was inhuman treatment under color of law.

40. Nicholas J. Torborg resent appearance on channel 11 news brought flashback of the assault and seems it was done by the MPD for plaintiff to see since it was done after defendants was summons on January 13, 2025.

41. Defendant Nicholas J. Torborg appearance on channel 11 news open the door for plaintiff to show defendant is not a good officer as he portrays to be.

6

James D. Wren

42.  Plaintiff is asking for the courts to have all the facts before making a sound judgement to dismiss or let civilians and jurors take the case in their hands and do their sworn duty.

43.  Plaintiff stand by his amended complaint and exhibits. Plaintiff is asking for a jury trial. Also, to show up to any hearing in person, for the court to grant plaintiff motion for production under rule 34 (a) to make defendants release all john does identities to the plaintiff.

44.  Since defendants did not mention the motion to produce to request video footage from BWC the Court must consider that as a waiver and issue the defendant to turn over all video requested.

45.  Plaintiff and defendants are in agreement on Jury trial. Plaintiff is requesting that it is a speedy trial.

## **REQUEST FOR PRODUTION OF DOCUMENTS**

 Under rule 34 (a) plaintiff is requesting production of documents or electronically stored information in a reasonably usable form (CD only)

1.  Scale video from room 108 in the Minneapolis city hall building dated June-10-2019 from when plaintiff was push in until plaintiff was carried out in wobbles approximately 230am until 5am.

2.  BWC from MPD officer Nicolas J. Torborg which captured the incident in question.

3.  BWC from MPD officer Justin Young which show what time plaintiff was put in handcuffs and multiple witness telling officer Justin Young what happen.

4.  BWC from all john does that were involved in this assault.

7

James D. Wren

## COUNT I

## FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS.

46. James D. Wren realleges and incorporates by reference herein each and every allegation in each paragraph above as though fully set forth herein.

47. By the actions described above, Defendants MPD, Nicholas J. Torborg and john does, under the color of state law, violated and deprived Wren of his clearly established and well-settled civil rights to be free from excessive force under the fourth and fourteenth Amendments to the United States Constitution.

48. Defendants subjected Wren to these deprivations of his rights either maliciously or by acting with reckless disregards for whether his rights would be violated.

49. As a direct and proximate result of the acts and omissions of defendants Nicholas J. Torborg and all john does, (names unknown) Wren suffered injuries, was forced to endure great pain, mental suffering and was damaged in the amount of 10,000,000 or to be determined by the jury.

50. Punitive damages in the amount of 10,000,000 or to be determined by the jury are available against Defendants, MPD, Nicholas J. Torborg and all john does and are hereby claimed as a matter of federal common law under Smith v. Wade, 461 U.S 30 (1983), and such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. stat. §549.20.

51. Wren is entitled to fully recover his costs, including reasonable attorney's fees under 42 U.S.C. §1988.

## COUNT II

## VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000d et seq.

52. James D. Wren realleges and incorporates by reference herein each and every allegation in each paragraph above as though fully set forth herein.

8

James D. Wren

53. Title VI of the Civil Rights Act of 1964, 42U.S.C. §2000d et seq, prohibits discrimination based on race by entities that receive federal financial assistance.

54. The city of Minneapolis and MPD receive federal financial assistance.

55. The city of Minneapolis, through the MPD, has engaged and continues to engage in a pattern and practice of race discrimination in its policing practices.

56. As set forth above, MPD stop, arrests, and uses force against black individuals at significantly higher rates than white individuals in similar circumstances.

57. The dipropionate impact of policing practice's on black individuals, and the failure to address it despite knowledge by city and MPD leaders, evidences a policy or custom.

58. Wren's injuries were directly and proximately caused by the aforementioned acts and omissions and by the city's and MPD is thereby liable in the amount of 10,000,000 or to be determined by the jury.

## COUNT III

### FOURTH AND FOURTEENTH AMENDMENT VIOLATION.

59. James D. Wren realleges and incorporates by reference herein each and every allegation in each paragraph above as though fully set forth herein.

60. By the actions described above, Defendant's MPD, Nicholas J. Torborg and all john does, under the color of law, violated and deprived Wren of his clearly established and well-settled Civil Rights to be free from excessive force. Plaintiff suffered injuries, was forced to endure great pain and mental suffering (psychological trauma), under the Fourth and Fourteenth Amendments to the United States Constitution.

61. Wren's injuries were directly and proximately caused by the afore mentioned acts and omissions and by the MPD's customs, patterns, and /or practices and the MPD is thereby liable in the amount of 10,000,000 or an amount to be determined by the jury.

James D. Wren

## COUNT IV
### CIVIL RIGHTS VIOLATIONS MONELL V. DEP'T OF SOCIAL SERVICES.
### Civil conspiracy claims under 42 U.S.C. §1985 (3) against all defendants.

62.   James D. Wren realleges and incorporates by reference herein each and every allegation in each paragraph above as though fully set forth herein.

63.   Before June 10, 2019, the MPD, with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted and/or ratified accustom, pattern or practice on the part of its officers of the improper use of force, including deadly force.

64.   By failing to discipline all officers consistently on this point, MPD policymakers, with the department's ratification and approval, have approved of a deficient policy.

65.   Further, before June 10, 2019 the MPD with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted and/or ratified a custom, pattern or practice on the part of its officers. Including defendant Nicholas J. Torborg and all john does, of the use of deadly force when none was justified, specifically, the use of neck restraints and hobbles on arrestees who had been handcuffed and in the prone position or otherwise were under officer control.

66.   Wren's injuries were directly and proximately caused by the aforementioned acts and omissions and by the MPD's customs, patterns, and or practices, and the MPD is thereby liable in the amount of 10,000,000 or to be determined by the jury.

## COUNT V

Even though section §1983 is familiar, its text bears quoting because who causes someone to be subjected to a constitutional violation is liable for the injury that the person caused section §1983 provides in relevant part: every person who, under color of any state ordinance, regulation, custom, or usage of a rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the injured in an action at law. 42 U.S.C. §1983 (EMPHASIS ADDED).

10

James D. Wren

67.   James D. Wren realleges and incorporates by reference herein each and every allegation in each paragraph above as though fully set forth herein.

68.   This statutory text makes crystal clear that holding the municipal body accountable for its actions is essential to deter assaultive behaviors in the area of public services. In this case, the claims are proven violations of plaintiff's civil rights defendants are liable under §1983, the constitutional violation is the direct result of deliberate indifference. Plaintiff has shown credible evidence that defendants have violated plaintiff constitutional rights based on racially motivated hatred of persons of color and assaultive behaviors. The defendants intentionally acted with misconduct under section §1983, defendants are accountable for causing the violation of plaintiff's constitutional rights by virtue of a municipal policy of custom. The proven credible evidence in this case shows that the defendants acted under color of state law.

69.   The defendants are liable to plaintiff for all damages and injuries plaintiff has suffered as a result. Plaintiff brings a direct action against all defendants, to pay to plaintiff the full sum combined amount for causing the violations of his civil rights.

70.   All defendants: as a direct and proximate result of defendant's acts, plaintiff suffered damages and injuries for which he is entitled to compensatory damages in the combined amount of $ 10,000,000 (10 million). The defendant's acts were intentional, malicious, deliberate, reckless, wanton, and/or cruel, such as to justify an award combined of punitive damages to plaintiff.

## COUNT VI
Claims for Discriminatory conduct (Minn. Rules 6700.0100 subp.26)

71.   All of the foregoing paragraphs are incorporated by reference and realleged as thought fully set forth herein.

72.   The defendants took handcuffs off of a person who had a firearm on him when he asked to have the handcuffs removed by the defendants but the defendants did not take the handcuffs off of plaintiff when he asked to have the hand cuffs removed after being handcuffed for over 2 hours that was discriminatory conduct.

11

James D. Wren

73. Wren's injuries were directly and proximately caused by the aforementioned acts and omissions and by the city's and MPD is thereby liable in the amount of 10,000,000 or to be determined by the jury.

## COUNT VII

Claims of negligence and neglect by the defendants.

74. James D. Wren realleges and incorporates by reference herein each and every allegation in each paragraph above as though fully set forth herein.

75. At no time while plaintiff was laying on the floor in handcuffs in interview room 108 in the city hall building did defendants come do a wellness round or check on plaintiff to see if plaintiff was alive and that was negligence plaintiff could of died of low blood circulation and been dead for hours had not the plaintiff started kicking the wall to get help and after plaintiff told a MPD officer that he could not even feel his own arms defendants still neglected the plaintiff by leaving the room without at least looking at the plaintiffs wrist to see if they were swelling or not, and that was neglectful on defendants behave.

76. Wren's injuries were directly and proximately caused by the aforementioned acts and omissions and by the city's and MPD is thereby liable in the amount of 10,000,000 or to be determined by the jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff James D. Wren prays for judgment as follows:

1. That this court find that defendants committed acts and omissions violating the United State Constitution, actionable under 42 U.S.C. §1983, and Title VI of the Civil Rights Act;

2. As to count I, a money judgment against defendants MPD, Nicholas J. Torborg and all john does for compensatory damages and punitive damages for 10,000,000 or in an amount to be determined by the judge together with cost, including reasonable attorneys' fees under 42 U.S.C §1988 and prejudgment interest;

12

James D. Wren

3.   As to count II, a money judgment against the defendants MPD, Nicholas J. Torborg, and all john does, for compensatory damages and punitive damages for 10,000,000 or in an amount to be determined by the jury;

4.   As to count III, a money judgment against the defendants MPD, Nicholas J. Torborg, and all john does, for compensatory damages and punitive damages for 10,000,000 or in an amount to be determined by the jury;

5.   As to count IV, a money judgment against defendants MPD, Nicholas J. Torborg and all john does for compensatory damages and punitive damages for 10,000,000 or in an amount to be determined by the judge together with cost, including reasonable attorneys' fees under 42 U.S.C §1988 and prejudgment interest;

6.   As to count V, a money judgment against defendants MPD, Nicholas J. Torborg and all john does for compensatory damages and punitive damages for 10,000,000 or in an amount to be determined by the judge together with cost, including reasonable attorneys' fees under 42 U.S.C §1988 and prejudgment interest;

7.   As to count VI, a money judgment against the defendants MPD, Nicholas J. Torborg, and all john does, for compensatory damages and punitive damages for 10,000,000 or in an amount to be determined by the jury;

8.   As to count VII, a money judgment against the defendants MPD, Nicholas J. Torborg, and all john does, for compensatory damages and punitive damages for 10,000,000 or in an amount to be determined by the jury;

9.   For an order mandating changes in the policies and procedures of the Minneapolis Police Department requiring, among other things, policies and training measures in the proper use of restraint techniques and the risks of positional asphyxia, the proper reporting of use of force, and the obligation to intervene when observing the unlawful use of force by other officers, and

10.  For such other and further relief as this court may deem just and equitable.

13

James D. Wren

**JAMES D. WREN DEMANDS A TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.**

Dated: February 11, 2025

James D. Wren #238420
Pro-se Plaintiff
MCF- Stillwater prison
970 Pickett St. No
Bayport, MN 55003

I declare (or certify, verify, or state) under the penalty of perjury under the laws of the United States of America the foregoing is true and correct to the best of my knowledge and understanding. 28 U.S.C. §1746.

14

James D. Wren