**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

RECEIVED
BY MAIL

AUG 15 2025

CLERK, U.S. DISTRICT COURT
ST. PAUL MN

Civil Action NO: 24-cv-04279 (ECT-DLM)

James D. Wren,
　　　　Plaintiff

**AMENDED COMPLAINT**
**FOR CONSTITUIONAL VIOLATION**
**OF A CIVIL SUIT UNDER 42 U.S.C.**
**§1983, 42 U.S.C. §1985 (3) FOURTH,**
**EIGHTH, AND FOURTEENTH AMENDMENT**
**CIVIL DAMAGES CLAIM EXPANDED**

V.

Minneapolis Police Department,
Torborg Nicholas J., Sherry Appledorn,
Sgt Charles Green, Craig Brown, and
Multiple John/Jane Doe's
Sued in their individual and official capacities
　　　　Defendants.

**JURY TRIAL DEMANED**
**YES**

SCANNED
AUG 1 8 2025 CH
U.S. DISTRICT COURT ST. PAUL

## AMENDED COMPLAINT

Civil Rights Violation for intentional excessive assaultive behaviors, conspiracy, wrongful punishment base on race. This complaint states facts sufficient to constitute all cause of action, including other claims in this complaint. Plaintiff James D. Wren submits this memorandum to respond to arguments and assertions contained in Defendants answer to complaint for Constitutional violation of a civil suit under 42 U.S.C. §1983, 42 U.S.C. §1985 (3) Fourth, Eighth, and Fourteenth Amendments. Plaintiff moves to join count III and V, add count VIII, IX, X, and Amend count IV and IIV of the Complaint on issues of Peace Officer standards and training, Evidence Tampering, MPD Withholding Evidence, Due Process Violations, and Obstructing legal process; an 14th Amendment violation.

## PREVIOUS LAWSUIT

Plaintiff has not filed any previous lawsuits related to the claims or facts herein.

## INTRODUCTION

The issues in this civil action is related to the Constitutionality of the Minneapolis Police Department, which is responsible for the confinement and management of individual detained within the Minneapolis Police Department. This civil action seeks

1

money damages for extraordinary injuries, the treatment that the Plaintiff was subjected to is grossly inhumane treatment the physical evidence in this case shows intentional torture.

Plaintiff James D. Wren submits this memorandum to respond to arguments and assertions contained in Defendants answer to complaint for Constitutional violation of a civil suit under 42 U.S.C. §1983, 42 U.S.C. §1985 (3) Fourth. Eighth, and Fourteenth Amendments.

Plaintiff received Discovery from the Defendants on or about 2-7-2025 within the discovery Plaintiff watched a video labeled Exhibit A which shows Officer Sherry Appledorn on the Plaintiff crime scene put a firearm behind a garbage can wearing no gloves then walk off and state to other Officers that her camera was on, third garbage to an officer, then I must didn't rubbed it hard enough, so much urine, vomit, beer! Indicating where Officer Sherry Appledorn moved it from had all that in the vicinity and now on the firearm. Officer Sherry Appledorn was approached by a crime scene detective who asked her is this seen on video throwing them in here? Officer Sherry Appledorn replied we don't know. Well lose it. At lease on ours. This conduct violates the conduct of law enforcement responsibilities on an active crime scene. Violates Plaintiff Due Process Rights guaranteed to him by the U.S Constitution 14th Amendment.

## THE PARTIES

1.    Plaintiff James D. Wren, is a resident of the State of Minnesota.

2.    Defendant Minneapolis Department is a State operated facility of the State of Minnesota. At all times prior to June 10th, 2019 pertinent to this complaint, was the Minneapolis Police Department is being sued within its official capacity.

3.    Defendant Nicholas J. Torborg, is a resident of the State of Minnesota. At all times prior to June 10th 2019 pertinent to this complaint, was the Minneapolis Police Dept Officer assigned on the above day and time, 2:30 am to 5:00 am. is being sued in his official and   individual capacity.

4.    Defendant Sgt Charles Green, is a resident of the State of Minnesota. At all times prior to June 10th 2019 pertinent to this complaint, was the Minneapolis Police Dept Officer assigned on the above day and time, 2:30 am to 5:00am. is being sued in his official and individual capacity.

5.    Defendant Sherry Appledorn, is a resident of the State of Minnesota. At all times prior to June 10th 2019 pertinent to this complaint, was the Minneapolis Police Dept Officer assigned on the above day and time, 2:30 am to 5:00 am. is being sued in his official and individual capacity.

2

6. Defendant Craig Brown is a resident of the State of Minnesota. At all times prior to June 10th 2019 pertinent to this complaint, was the Minneapolis Police Dept Officer assigned on the above day and time, 2:30 am to 5:00 am. is being sued in his official and individual capacity.

## JURISDICTION AND VENUE

7. This action arises under the laws of the United States, and Jurisdiction is conferred on this court pursuant to 28 U.S.C. §1331 (Federal Question) and 28 U.S.C. §1343 (Civil Right). Supplemental Jurisdiction of the court over the claims arising under State law is invoked pursuant to 28 U.S.C. §1367 (Supplement Jurisdiction).

8. Venue in the State of Minnesota is proper pursuant to 28 U.S.C. §1391 (b) because it is the district in many Defendants reside, and because a substantial part of the events or omissions giving rise to the claims occurred within the State of Minnesota.

## FACTS

9. On June 10th, 2019 Defendant Nicholas J. Torborg, including the John Does (Defendants), they all intentionally, and knowingly engaged in unethical practices in the area of the community, and Plaintiff race was a factor of their racial motivated targeting behavior. The Defendants wrongfully kept Plaintiff in hand cuffs for more than two hours than one officer of 250 pounds or more kneeled on Plaintiff back after Plaintiff was laying on his stomach and handcuffed violating police policy Plaintiff could have died from "EXICTED DELIRIUM".

10. As Plaintiff was handcuffed for more than two hours, he was in complete behavioral control, there were no drugs or firearm found on Plaintiff. Defendants failed to follow their own policies and procedures. The Defendants admitted that the Plaintiff was in complete behavioral control, being placed in handcuffs without any threatening incident while being placed in the back of the squad car.

11. Even when the Plaintiff was transported to room 108 by squad 131, (officers Trupe and Brown). Defendant Nicholas J. Torborg, had the officers place Plaintiff in the interview room located next to the bathroom on the north end of room 108. At all times the Plaintiff was very cooperative.

12. Defendant Nicholas J. Torborg, stated within his report that he spoke with Sgt Stender in a different area of room 108, when officer Trupe approached him and informed him that Wren (Plaintiff), was trying to kick the interview room door down.

13. The Plaintiff became very frustrated after waking up still in hand cuffs and arms completely numb due to the lack of blood circulation and having his arms behind his back for hours which caused emotional distress, panic, made the Plaintiff feel very upset,

3

and scared the Plaintiff was so dizzy and incoherent that he could not even stand on his own two feet. Plaintiff yelled and screamed for help but not one officer came to check on Plaintiff so the Plaintiff started kicking the wall while laying on his back to get the attention of the Defendants. When a John Doe/ Defendant did enter room 108 in full MPD uniform the Defendant asked the Plaintiff why he was kicking the wall.

14.    The Plaintiff explained to the Defendant in great detail that he could "not" feel his arms anymore due to being in the handcuffs for a long period of time then asked the Defendant/John Doe to please take the handcuffs off, Defendant said "no" Plaintiff asked to at least have the handcuffs loosen, again Plaintiff said "no" than added you're a murderer and slammed the door in Plaintiff face all while in another interview room the same Defendants removed the handcuffs off of another individual right after he asked to have the hand cuffs removed from his wrist and the person had a firearm found on him violating Plaintiff right to be free from discriminations the handcuffs caused great pain and suffering. The Fourteenth Amendment Due Process clause of the United States Constitution requires that all state officials of law enforcement must not subject detainees to torture or any acts of cohesive persuasion during interrogation.

15.    The first John Doe failed to respond appropriately when he denied to take the handcuffs off Plaintiff after Plaintiff asked Defendant 3 different ways to relieve Plaintiff of his pain and discomfort from being handcuffs for hours.

1)    To remove the handcuffs.

2)    To put the handcuffs in front of him.

3)    To at lease loosen the handcuffs if safety was an issue.

16.    But instead of the Defendants taking off the handcuff or even reasoning with the Plaintiff the Defendant called the Plaintiff a murderer before he was convicted of any crime taking away his Constructional right to be presumed innocent until proving guilty by a court of law then slammed the door in the Plaintiff pleading face.

17.     The Plaintiff became even more frustrated after being denied to having the handcuffs taking off and started kicking the wall again to get the attention of anyone to help him due to the Plaintiff panicking the Defendants/John Does including Nicholas J. Torborg enter room 108 the Defendants did not ask the Plaintiff to stop kicking the wall or even ask the Plaintiff why he was kicking the wall, no de-escalation efforts were taking which MPD are trained to do the Defendants just went straight to assaultive behavior (please watch video from room 108 in questing on said night) which was outrageous and extreme assault and battery no reasonable officer would leave a human being detained in a confinement for hours in handcuffs than have a 250 pound plus person kneel on a person back while he lays on his stomach handcuffed while other officers in full MPD uniform and plain clothes force Plaintiff legs to bend  so far back that Plaintiff right knee pops out

4

of place after Plaintiff just asked to have the handcuffs removed, taking away Plaintiff sense of safety insured by the Fourth Amendment to feel secure in their person, the Eighth Amendment forbid cruel and unusual punishment and the actions of the Defendants was careless for a person's life and liberty and was done purposefully and intentionally to inflict emotional distress and motivated by race Plaintiff believes which the DOJ investigations have to be true about the MPD.

18. Giving the due process infirmity and taking into account by leaving the handcuffs on Plaintiff for more than two hours, forced the Plaintiff to sleep in handcuffs, than a John Doe failed to help Plaintiff after Plaintiff asked the John Doe who was in full MPD UNIFORM to remove or, adjust handcuffs due to the lack of blood circulation in Plaintiff arms, and a 250 plus officer kneeling on Plaintiff back and neck area while other John Does assaulted Plaintiff is careless of life and liberty and is excessive force subjecting the Plaintiff to harsh punishment, cruel and unusual punishment which constitutes punitive practice, and therefor violate the Fourteenth's Amendment substantive due process guarantee, the Eighth Amendment forbid cruel and unusual punishment, and the Fourth Amendment the right to feel secure in their person, the John Does/ Defendants acted as a group and misused the handcuffs as a weapon, and the knee on Plaintiff back as he lay on his stomach in handcuffs while other John Does assaulted the Plaintiff was harm to Plaintiff on the basic of racially motivated conspiracy, Denial of the right to be free from punishment in violation of the Fourteenth Amendment to the U.S. Constitution 42 U.S.C §1983, and 42 U.S.C §1985 (3).

19. Police brutality continues in the city of Minneapolis against people of color, and it must end. This complaint is clear that the Plaintiff was deprived, under color of state law, of his clearly established rights secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

20. The state policy which, by requiring law enforcement to protect detainees from cruel and unusual punishment, violates the Eighth Amendment. A state may not harshly punish a colored person that's been in custody on the basis of race. It is wrong and unjust as well as Unconstitutional to leave a colored person in handcuffs for more than two hours until Plaintiff could not feel his arms for the purpose of cruel and harsh punishment. Then assaulting the Plaintiff for experiencing great pain and discomfort from the torture was discriminatory conduct.

21. The record contained no evidence to support a reason why the Defendants kept the Plaintiff in handcuffs for more than two hours other than for their own convivence. The punishment was so cruel and harsh that it violates the Due Process clause of the Fourteenth Amendment and Eighth Amendment and 42 U.S.C. §1983.

22. Being nothing in the record to indicate Plaintiff of said having a firearm, yet these Defendants kept Plaintiff in handcuffs for over two hours while trying to get a star witness by subjecting him to acts of cruel and unusual punishment, and with the unlawful

5

use of excessive force. As many as eight Defendants (John Does) or more intentionally, brutally assaulted the Plaintiff repeatedly while being held in the interrogation room. That action of state officials in their own individual and official capacities is to be regarded as action of Due Process violation under the meaning of the Fourteenth Amendment, giving the specific physical evidence and facts of failure to protect. There is no justification for this Civil Rights violation, it was excessive force, racially motivated, assaultive behavior, and conspiracy. 42 U.S.C. §1985 (3).

23.     The Minneapolis Police Department showed conspiracy to obstructing legal process; by covering up the John Does behavior there is no report by the Defendants of what happen to the Plaintiff, or the John Does identity as been giving to the Plaintiff or the Plaintiff private attorney Zachary Longsdorf Plaintiff two private investigators Michael Grostyan and Robert Johnson any video from this incident please see exhibit # 1 affidavit of James Wren, which will show five different people trying to get Plaintiff scale video Plaintiff even hired self-defense expert Dr John R. Black who is a retired police officer and army veteran and ineffective council Bruce Rivers and they can't even get the videos in the native format it is clear that the MPD are covering up the incident in questioning and obstructing the legal process.

24.     On June 10th 2019 around 2:17 am until approximately 4:50 am James D. Wren was in the custody of the Minneapolis Police Department. While in the custody of the Minneapolis Police Department James D. Wren was in handcuffs the entire time. James D Wren was on camera from MPD officer Justin Young BWC until James D. Wren was escorted to room 108 located downtown Minneapolis in the city hall building before being escorted to the Hennepin County Jail downtown Minneapolis Minnesota where the handcuffs 'where removed from Plaintiff wrist around 5:10 am.

25.     it's a fact that on June 10, 2019 while James D. Wren was in room 108 Plaintiff was handcuffed and the Defendants failed to come and do a wellness check on Plaintiff. Violating Plaintiff federal Civil Rights.

26.     James D. Wren was in the custody of Minneapolis Police Department on June 10, 2019, James D. Wren was assaulted while in handcuffs by the Defendants while in MPD custody in room 108 located in the city hall building downtown Minneapolis Minnesota. The MPD knew its officers including Nicholas J. Torborg were applying force to the back and neck of prong (lying on his stomach) Plaintiff despite the known, appreciated, and obvious risk of causing serious injury or death from Positional Asphyxia none of Defendants intervene to stop the John Does and Defendant.

27.     June 10, 2019 Sammy Cage was in the custody of the Minneapolis Polices Department in the city hall building located down town Minneapolis. Sammy Cage was taking into custody with a loaded firearm on his person. Sammy Cage asked Defendants to take his handcuffs off of him and Defendants removed the handcuffs off of Sammy Cage.

6

28.     On June 10, 2019 Nicholas J. Torborg and the John Does/ Defendants either engaged in Defendants misuse of their authority with unreasonable and excessive use of force and did not help the Plaintiff or none of Defendants wrote a report on the Defendant's behavior when officers are required to self-report any prohibited conduct.

29.     Plaintiff was injured on June 10, 2019 physically and still goes to physical therapy for his injuries (please see exhibits) Plaintiff still has a lot of pain in his neck and back area where a 250 pound plus officer kneeled on his neck and back area while in the prone position against police policy and bending Plaintiff knee back so far it popped out of place and causes Plaintiff great pain, was cruel and unusual punishment violating the Eighth Amendment of the U.S Constitution.

30.     Plaintiff suffers from emotional distress because of the actions of the defendants who work for the MPD who violations fall under 42 U.S.C. §1983. 42 U.S.C. §1985 (3) the Fourth, Eighth, and Fourteenth Amendment of the U.S Constitution.

31.     All incident is on Justin Young BWC, room 108 cameras, Nicholas J. Torborg BWC and all John Does BWC, in cloud-storage, known as Evidence.com.

32.     Plaintiff is requesting that the Minneapolis Police Department turn over all John Does identity's immediately so Plaintiff can properly add the individuals to the law suit, to see if any of the John Does have previous Civil Right law suits, discipline for misconduct or any citizen complaints lodged against them.

33.     Plaintiff is requesting that the Minneapolis Police Department turn over all video and audio pertaining to this civil complaint so the truth of all events can be seen by the Honorable Judge and the public. Because the MPD have it in a library of digital evidence on its cloud-storage site for body-worn cameras (BWC) recordings, known as Evidence.com, also under the Freedom of Information Act and the privacy Act of 1974, 5 U.S.C 552, 552A.

34.     Plaintiff complaint has merit the MN Dept. of Human Rights (DHR) April 27,2022 investigation. And the Department of Justice (DOJ) investigations on the MPD has found evidence of corruption, discrimination against Blacks and Native Americans. Misuse of authority and lack of accountability. Like in the Robert Brooks case who was hand cuffed while assaulted out of New York this assault and excessive force was caught on camera, like George Floyd case out of Minneapolis Minnesota who MPD officers kneeled on his neck and back area for over 8 minutes while he was handcuffed and lay on his stomach in the prone position this excessive force case was caught on camera if the courts hold the MPD accountable and make the MPD give up these videos that Plaintiff is requesting then I James D. Wren Plaintiff will be able to hold the MPD and Defendants accountable for what was done to Plaintiff while in handcuffs for hours and laying on Plaintiff stomach in the prone position while getting assaulted and all of this was on camera and can quickly be proven or not the MPD has a model Deny and Delay but it's been over

5 years since Plaintiff, his attorneys, self-defense experts and private investigators have been trying to get these videos.(please see Plaintiff affidavit it's an exhibit in compliant).

35.    In total, the city has paid out over 70,000,000 in the last two decades alone as a result of the Unconstitutional use of force by the MPD officers.

36.    MPD's policies, practices and customs, along with its longstanding failure to discipline offending officers, have led to a pattern and practice of excessive force by MPD officers.

37.    Instances of misconduct, according to the DHR report, are "not properly investigated, not timely addressed, and officers are not consistently held accountable" even when BWC evidence or other objective evidence contradicts an officer's use-of-force reporting.

38.    The DHR concluded that MPD officers "use higher rates of more severe force against black individuals than white individuals in similar circumstances" and the "race is likely the reason".

39.    This explains why Defendants violated the Civil Rights of Plaintiff James D. Wren because Defendants knew the city would cover for them and not cooperate 'with a board investigation and give up the BWC footage or the footage from room 108 in the city hall building, unless an Honorable Judge say so'.

40.    The DHR also noted that MPD officers were almost Twice as likely to use neck restraint against black individuals than white individuals when confronted with similar situations.

41.    Minneapolis Mayor Jacob Frey called the DHR's findings "repugnant, at times horrific and claimed he was outraged".

42.    September 9, 2010 David Smith a black man was handcuffed behind his back put in the prone position for 4-1/2 minutes with MPD officer Timothy Gorman kneeing on Smith's back while MPD officer straddling his thigh/buttocks region until David Smith showed no sign of life.

43.    The Smith incident was a clear example of excessive force against a black man Gorman kneed on Smith's back while Smith was handcuffed and fully controlled. No reasonable officer could believe that the use of such force was objectively reasonable.

44.    Like in the Smith incident Plaintiff was handcuffed, was put in the prone position, and was fully controlled by Defendants, no reasonable officer could believe that the use of such force was objectively reasonable to do to Plaintiff.

45.	MPD policy 5-311 allowed officers to employ "neck restraint" on subjects, defining such restraints as "non-deadly force" despite their obvious risks.

46.	MPD trained officers that such a restraint was "non-deadly force" even though it carried with it a reasonable likelihood of death or serious bodily harm.

47.	At no point in time did Plaintiff James D. Wren pose an immediate threat to the Defendants/officers.

48.	BWC from Defendants and video from room 108 will show that Plaintiff was not resisting and even asked the Defendants "why are yall doing this to me all I wanted was to get the handcuffs removed" while being placed in hobbles. Hobbles is a device limiting a person's motion by tethering Plaintiff legs together and securing them to his waist.

49.	Defendants carried James D. Wren out of room 108 by Plaintiff arms that Plaintiff said he could not feel any more, while other Defendants carried Plaintiff by his feet.

50.	Under MPD policy 5-316 then in effect, use of a hobble was appropriate only where arrestees were "combative" and "pose[d] a threat to themselves, Officers, or others".

51.	None were true of the subdued, prone, and handcuffed Plaintiff use of the hobble violated policy and was objectively unreasonable, as Wren remained handcuffed and not resisting.

52.	Wren never presented an immediate threat to the safety of officers or others from the time Plaintiff first encounter Defendants on June 10, 2019 through his booking at the Hennepin County Jail that early morning.

53.	Defendants nowhere reported that, while handcuffed for hours, or while in the prone position did a Defendant (name unknown) kneel on Plaintiff back and neck then place Plaintiff in hobbles.

54.	Defendants actions while under the color of law as MPD officers on June 10, 2019 deprived Plaintiff James D. Wren of his Constitutional Rights specifically, the right to be free from an unreasonable seizure, which includes the right to be free from the use of unreasonable force by a police officer.

55.	Exhibit J video from Defendants at time stamp 13:12 show all Defendants left Plaintiff in room 108 by his self in the prone position until time stamp 16:58 a total of 3 minutes and 46 seconds, more than enough time for Plaintiff to died from Positional Asphyxia this showing neglect of all 4 Defendants that were standing around just watching the Plaintiff.

9

56. Exhibit F T 09:43 :41z Axon Body 2 x81183051 2:39 into video Exhibit F show 4 officers/Defendants standing around the door area of room 108 watching the Plaintiff on the ground in the prone position for over 3 minutes and none of the Defendants place Plaintiff in the recovery position like police training has taught officers to do when a person in their custody and the MRT is in use again this is neglect on the Defendants.

57. Defendant Craig Brown hog tied the Plaintiff first before running to get the proper hobble device.

58. Defendant Craig Brown knew that putting anything connecting to Plaintiff hand cuffs could put Plaintiff at risk of harm.

59. Defendant Craig Brown watched Plaintiff lay on the ground in the prone position for over 3 minutes but did not step in and place Plaintiff in the recovery position and he was the one who put Plaintiff in the hobble device.

60. Defendant Nicholas J. Torborg helped hog tied the Plaintiff going against MPD policy before officer Craig Brown went and got the proper hobble device this bold decision put the Plaintiff life in danger and Plaintiff beliefs this is when his leg popped out of place.

61. Defendant Nicholas J. Torborg acknowledge to other Defendants that the hog tie was wrong but still did it against his training please see Defendants exhibit E video.

62. Due to Plaintiff being in the hobbles device and left in the prone position it was very hard for the Plaintiff to breath.

63. The handcuffs on the Plaintiff for over two hours has gave the Plaintiff serve nerve damage with his fingers going numb out of the blue and as the years has pasted it has got worse.

64. On June 10, 2019 Plaintiff James D. Wren was arrested and later convicted in Hennepin County case no. 27-CV-19-13690.

65. Newly- obtained BWC video (Exhibit A from Defendants) shows Officer Sherry Appledorn moving or planting a firearm with her bare hands on a active crime scene at T09:02:33z on 2019-06-10 AXON body 2 x81029541.

66. Officer Sherry Appledorn either relocates this firearm away from deceased victim location or plants the firearm on Plaintiff crime scene, and never secures or logs it into evidence please see MPD property-room records and the evidence log Plaintiff has summited as exhibit #7 on criminal case No. 27-CV-19-1369 Obstructing Legal process 609.50.

78.    Officer Sherry Appledorn actions violated Plaintiff procedural due process rights Officer Sherry Appledorn conduct was misconduct of a public Officer (Minn.stat.609.43) please see Defendant Exhibit A.

79.    Due to Sherry Appledorn conduct Plaintiff is requesting all video evidence connected to criminal case # 27-cv-19-13690 because Plaintiff do not know if there is more corruption and evidence tampering being withheld.

80.    Sherry Appledorn conduct with that firearm violated Brady v. Maryland when this video was withheld from Plaintiff in Plaintiff criminal case.

81.    The original imprisonment was lawful yet by Sherry Appledorn act which has taking place afterward, the Plaintiff is entitled to be discharged;

82.    Sherry Appledorn tampered with exculpatory evidence that changed the outcome of Plaintiff trial.

83.    Obstructing legal process is a crime 609.50 subd. (1) and Defendant Sherry Appledorn actions clearly violated 609.50 subd. (1) and (2).

84.    Defendant Sherry Appledorn actions or lack of deprived the Plaintiff of life, liberty, or property, without Due process of law; when Defendant moved that firearm, or planted that firearm and did not properly log that firearm in evidence for criminal case No. 27-CV-19-1369 therefore making a lawful imprisonment unlawful making Plaintiff entitled to be discharged; under Civil Process.

85.    This behavior is what the DOJ has found to be a regular practice with the MPD against blacks in Minneapolis Minnesota and officer who engage in this conduct needs to be held accountable.

86.    If Defendant Sherry Appledorn had put the firearm she is seen moving in exhibit A in evidence Plaintiff self defense claim would have been successful showing that not only did SC have a gun but MC had a gun on him also like all the witness including Plaintiff said on scene and at Plaintiff trial.

87.    Defendant Sgt Charles Green as an officer of authority over Nicholas Torborg and the John/Jane doe's officers the Sgt did not instruct them to turn Plaintiff on his side in the recovery position when Plaintiff was place in hobbles, hobbles is a device limiting a person's motion by tethering Plaintiff legs together and securing them to his waist, knowing that if a human is in the prong position with no weight on a person back it can still be deadly which a Sgt should know.

12

67. The state in Plaintiff criminal case No. 27-CV-19-13690 presented a narrative omitting the fact that the victim was armed, thus undermining Plaintiff's self-defense claim.

68. The video or firearm was not disclosed at trial or included in the discovery process violating Plaintiff 14th Amendment.

69. This BWC footage is new-discovered and proves the victim had a weapon, thereby supporting Plaintiff's assertion that he acted in lawful self-defense.

70. The withholding and manipulation of this evidence directly contributed to Plaintiff conviction and violated his 14th Amendment Constitutional Rights.

71. James D. Wren was convicted without the benefit of this evidence that the Defendants tampered with a clear violation of Due process and denial of a complete defense. Chambers V. Mississippi, 410 U.S. 284 (1973).

72. Officer Sherry Appledorn's removal and relocation of the firearm, and failure to log it, prevented the jury from seeing critical evidence supporting self-defense and was misconduct of public officer 609.43.

73. Officer Sherry Appledorn act was a violation of right to a fair trial by evidence suppression, obstructing legal process, 609.50, misconduct of public officer or employee 609.43 and violation of Plaintiff Due Process Rights guaranteed by the 14th Amendment of the United States Constitution.

74. Officer Sherry Appledorn and other MPD employee's John/Jane Doe's all conspired to suppress exculpatory evidence from Plaintiff violating the 14th Amendment Rights to Due Process.

75. Section 1. of the 14th Amendment states no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the UNITED STATES; nor shall any state deprive any person of life, liberty, or property, without Due Process of law; nor deny to any person within its Jurisdiction the equal protection of the laws.

76. Officer Sherry Appledorn engaged in conduct that would be a Felony in Minnesota or another Jurisdiction. As the video shows Sherry Appledorn moving a Firearm from one location to another without no gloves on or planting a Firearm, on an active crime scene.

77. Officer Sherry Appledorn conduct was misuse of an officer's authority by use or attempted use of one's position or authority as an Officer to obtain benefit, avoid a detriment, or harm another; another being Plaintiff.

11

88.     Defendant Sgt Charles Green being a senior officer should know how the MRT works and the rules when using the hobble device so for Sgt Charles Green to fail to instruct his officers to place Plaintiff in the side recovery position and for all of the officers including Sgt Green to leave room 108 leaving Plaintiff in the room by his self for minutes in the prone position with the hobble device attached was negligence Plaintiff could have died from Positional Asphyxia.

89.     Defendants Sgt Charles Green did not inform Hennepin County Jail after Plaintiff was transported that Plaintiff had the MRT applied again negligence on Defendant behalf.

90.     Defendant Sgt Charles Green should know the procedures when using the MRT device and that's to notify the person who takes custody of Plaintiff that the MRT was applied.

91.     Sgt Charles Green did not document the use of force and MRT being applied to Plaintiff like he is trained to do as a Sgt on scene again more neglect and Obstructing legal process by the Defendant.

92.     Sgt Charles Green was the lead detective and supervisor on scene and did not complete a supervisor's force review or notify paramedics after Plaintiff physical changed in his behavior, Plaintiff went from having energy and kicking the wall to barely talking above a whisper, face swollen, and went to sleep all signs that a paramedic should have been contacted again neglect on Defendant behalf.

## INJURIES JAMES D. WREN SUFFERED

93.     Wren was injured as a result of the use of excessive force against him on June 10, 2019

94.     Wren anxiety and changes in depression has increased as a result of June 10, 2019, hydroxyzine was prescribed.

95.     Plaintiff has back, neck, and right knee problems as a result of the use of excessive force by the MPD and still goes to physical therapy for treatment.

96.     Wren already was diagnosed with post-traumatic stress disorder (PTSD) after incident on June 10, 2019 its symptoms are worst.

97.     Wren continues to be traumatized by the actions of Defendant's treatment and torture every June 10th because June 10th is Plaintiff birthday so every birthday Plaintiff has flashbacks of what the Defendants done to him and goes into a deep depression, has difficulty sleeping and experiences nightmares when he finally does go to sleep.

13

98.     The United Nations Convention Against Torture and other Cruel Inhuman, or Degrading Treatment or Punishment defines the word "torture" to mean "an extreme form of cruel and inhuman punishment committed under the color of law." The convention "allows for no circumstances or emergencies where torture would be permitted".

99.     Defendants torture Wren by subjecting Wren to stay in handcuffs for over 2hours, by assaulting Wren while he was in handcuffs, by kneeling on Wren's back and neck' are while he lay in the prone position, and by placing the hobbles on and carrying Wren out like cattle which was inhuman treatment under color of law.

100.    Nicholas J. Torborg resent appearance on channel 11 news brought flashback of the assault and seems it was done by the MPD for Plaintiff to see since it was done after Defendants was summons on January 13, 2025.

101.    Defendant Nicholas J. Torborg appearance on channel 11 news open the door for Plaintiff to show Defendant is not a good officer as he portrays to be.

102.    Plaintiff stand by his amended complaint and exhibits. Plaintiff is asking for a jury trial. Also, to show up to any hearing in person, for the court to grant Plaintiff motion for production under rule 34 (a) to make Defendants release all John Does identities to the Plaintiff.

103.    Since Defendants did not mention the motion to produce to request video footage from BWC the Court must consider that as a waiver and issue the Defendant to turn over all video requested.

104.    Plaintiff and Defendants agree on Jury trial. Plaintiff is requesting that it is a speedy trial.

105.    James D. Wren has a 369-month sentence because of the actions of Sherry Appledorn not placing that firearm in evidence.

106.    Wren Anxiety and changes in depression has increased as a result of June 10, 2019, hydroxyzine was prescribed.

107.    Wren already was diagnosed with post-traumatic stress disorder (PTSD) after incident on June 10, 2019 its symptoms are worst.

108.    Mental anguish.

109.    Priceless Time away from Plaintiff mother, father, and children.

110.    Loss of Plaintiff promotion business and rap career.

14

111.    6 years of wages.

112.    Nerve damage.

113.    Hair loss due to stressed induced Alopecia nutrafol was ordered.

114.    Over Six figures in lawyer fees.

115.    Shoulder damage from Plaintiff having his arms behind his back for hours.

## COUNT I

**Claim for excessive use of force, this claim is supported by the physical evidence of the wearable video cameras, and at all times the defendants wearable video cameras were fully activated. And cameras in 108 were on where the Plaintiff was kept.**

116.    All of the foregoing is incorporated by reference and realleged as thoughtfully set forth herein,

117.    The records make plain the rampart cruel and unusual punishment were with great intent, the Minneapolis Police Department's failure to take available step to stop the Defendant's assaultive behaviors. There is nothing at the Minneapolis Police Department which serves the case to severe psychological harm and physical discomfort with injures from extreme cruel and unusual punishment. In this case, there is a showing of a concrete punishment prescribed by the Fourteenth Amendment that is directly caused by Defendants' punitive practice. The Defendants conduct does violate Plaintiffs Constitutional Right to be free from punishment under the Fourteenth Amendment to the U.S. Constitution. The right to be secure in their person under the Fourth Amendment. The Eighth Amendment to be free from cruel and unusual punishment.

118.    A showing of bad faith by state official's relief can be granted, seeking monetary relief from the Defendants. Under 42 U.S.C. §1983, when the facts support the Plaintiffs' claims upon the relief, then the Plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that defeat the immunity defense. There can be no justification for acting in bad faith.

119.    James D. Wren realleges and incorporates by reference herein each and every allegation in each paragraph above as though fully set forth herein.

15

120.   By the actions described above, Defendants MPD, Nicholas J. Torborg and John Does, under the color of state law, violated and deprived Wren of his clearly established and well-settled civil rights to be free from excessive force under the Fourth and Fourteenth Amendments to the United States Constitution,

121.   Defendants subjected Wren to these deprivations of his rights either maliciously or by acting with reckless disregards for whether his rights would be violated.

122.   As a direct and proximate result of the acts and omissions of Defendants Nicholas J. Torborg and all John Does, (names unknown) Wren suffered injuries, was forced to endure great pain, mental suffering and was damaged in the amount of 10,000,000 or to be determined by the jury.

123.   Punitive damages in the amount of 10,000,000 or to be determined by the jury are available against Defendants, MPD, Nicholas J. Torborg and all John Does and are hereby claimed as a matter of federal common law under Smith v. Wade,461 U.S 30 (1983), and such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. §549.20.

124.   Wren is entitled to fully recover his costs, including reasonable attorney's fees under 42 U.S.C. §1988.

## COUNT II

**Claims for intentional and / or reckless infliction of emotional distress against Defendants, Minneapolis Police Department Nicholas J. Torborg and all John Does.**

**VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. g2000d et seq.**

125.   Of the foregoing is incorporated reference and realleged as though fully sworn forth herein.

126.   The Defendants within this case all have intentionally acted within their own individual and official capacities. The Defendants did intentionally, maliciously, and with reckless disregard of life and deliberate indifference to Plaintiffs' rights, engage in extreme and outrageous conduct a connection with punishment of Plaintiff, including but not limited to, engaging in assaultive behaviors. The Defendants are liable in their official and individual capacities for the damages caused by the intentional; and/or reckless infliction of emotional distress by Defendants, the evidence is showing a violation of the Fourth,

Eighth, and Fourteenth Amendment and under 42 U.S.C. §1983 and 42 U.S.C. §1985 (3), which is to provide a damages remedy for a Constitutional violation.

127. James D. Wren realleges and incorporates by reference herein each and every allegation in each paragraph above as though fully set forth herein.

128. Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2OOOd et seq, prohibits discrimination based on race by entities that receive federal financial assistance.

129. The city of Minneapolis and MPD receive federal financial assistance.

130. The city of Minneapolis, through the MPD, has engaged and continues to engage in a pattern and practice of race discrimination in its policing practices.

131. As set forth above, MPD stop, arrests, and uses force against black individuals at significantly higher rates than white individuals in similar circumstances.

132. The dipropionate impact of policing practice's on black individuals, and the failure to address it despite knowledge by city and MPD leaders, evidences a policy or custom.

133. Wren's injuries were directly and proximately caused by the aforementioned acts and omissions and by the city's and MPD is thereby liable in the amount of 10,000,000 or to be determined by the jury.

## COUNT III

**Claims under 42 U.S.C. 1983 against all defendants.**

**FOURTH AND FOURTEENTH AMENDMENT VIOLATION.**

134. All of the foregoing paragraphs are incorporated by reference and realleged as thought fully set forth herein.

135. The actions of Defendants constitute malicious punitive practices causing Plaintiff harm, (psychological trauma), in violation of Plaintiffs right under the United States Constitution and U.S.C. §1983. The record is replete with credible evidence of the Plaintiff being unreasonably duty includes protecting him from

17

harm, instead they the Defendants assaulted Plaintiff. Many of the injuries so inflicted have required extensive medical care please see exhibit #3

136.    Even though section 1983 is familiar, its text bears quoting because who causes someone to be subjected to a constitutional violation is liable for the injury that the person caused section 1983 provides in relevant part: every person who, under color of any state ordinance, regulation, custom, or usage of a rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the injured in an action at law. 42 U.S.C. 1983 (EMPHASIS ADDED).

137.    This statutory text makes crystal clear that holding the municipal body accountable for its actions is essential to deter assaultive behaviors in the area of public services. In this case, the claims are proven violations of Plaintiff's Civil Rights Defendants are liable under §1983, the Constitutional violation is the direct result of deliberate indifference. Plaintiff has shown credible evidence that Defendants have violated Plaintiff Constitutional Rights based on racially motivated hatred of persons of color and assaultive behaviors. The Defendants intentionally acted with misconduct under section 1983, Defendants are accountable for causing the violation of Plaintiff's Constitutional Rights by virtue of a municipal policy of custom. The proven credible evidence in this case shows that the Defendants acted under color of state law.

138.    The Defendants are liable to Plaintiff for all damages. And injuries Plaintiff has suffered as a result. Plaintiff brings a direct action against all Defendants, to pay to Plaintiff the full sum combined amount for causing the violations of his Civil Rights.

139.    All Defendants: as a direct and proximate result of Defendant's acts, Plaintiff suffered damages and injuries for which he is entitled to compensatory damages in the combined amount of $ 10,000,000 (10 million). The Defendant's acts were intentional, malicious, deliberate, reckless, wanton, and/or cruel, such as to justify an award combined of punitive damages to Plaintiff.

140.    All of the foregoing is incorporated by reference and realleged as though fully set forth herein.

141.    The actions of Defendants constitute malicious punitive practices causing Plaintiff harm, (psychological trauma), in violation of Plaintiffs right under the United States Constitution and U.S.C. §1983. The record is replete with credible evidence of the accuser being unreasonably duty includes protecting him from harm, instead they the Defendants assaulted Plaintiff. Many of the injuries so inflicted have required extensive medical care please see exhibit #3.

18

142.     By the actions described above, Defendant's MPD, Nicholas J. Torborg and all John Does, under the color of law, violated and deprived Wren of his clearly established and well-settled Civil Rights to be free from excessive force. Plaintiff suffered injuries, was forced to endure great pain and mental suffering (psychological trauma), under the Fourth and Fourteenth Amendments to the United States Constitution.

143.     The Defendants are liable to Plaintiff for all damages and injuries Plaintiff has as a result. Plaintiff brings a direct action against all Defendants, to pay Plaintiff the full sum combined amount for causing the violations of his Civil Rights.

144.     All Defendants: as a direct and proximate result of Defendant's acts, Plaintiff suffered damages and injuries for which he is entitled to compensatory damages in the combined amount of $ 10,000,000 (10 million). The Defendant's acts were intentional, malicious, deliberate, reckless, wanton, and/or cruel, such as to justify an award combined of punitive damages to Plaintiff.

## COUNT IV

**Civil conspiracy claims under 42 U.S.C. 1985 (3), against all defendants.**

## CIVIL RIGHTS VIOLATIONS MONELL V- DEP'T OF SOCIAL SERVICES.
### Civil conspiracy claims under 42 U.S.C. 1985 (3) against all defendants.

## CIVIL RIGHTS VIOLATIONS MONELL V. DEP'T OF SOCIAL SERVICES.
### Civil conspiracy claims under 42 U.S.C. 1985 (3) against all defendants.

145.     James D. Wren realleges and incorporates by reference herein each and every allegation in each paragraph above as though fully set forth herein.

146.     Physical evidence shows the Defendants wearable video cameras, and video from room 108 in the city hall building shows the Defendants assaultive behaviors their use of excessive force while beating Plaintiff in handcuffs and kneeling on Plaintiff back while he lay on his stomach. The Defendants conspired among themselves with others, intentionally maliciously, with reckless disregard for and deliberate indifference to Plaintiffs' Constitutional Rights under the Fourth, Eighth and, Fourteenth Amendment of the United States Constitution. The Defendants caused Plaintiff injury, (please see exhibits #3) including great distress, physical pain, anguish, fear, and suffering. Defendants are liable in their official capacities

19

for the damages caused by the Defendants act of conspiracy to deny Plaintiff his Constitutional rights.

147.     James D. Wren realleges and incorporates by reference herein each and every allegation in each paragraph above as though fully set forth herein.

148.     Before June 10, 2019, the MPD, with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted and/or ratified accustom, pattern or practice on the part of its officers of the improper use of force, including deadly force.

149.     By failing to discipline all officers consistently on this point, MPD policymakers, with the department's ratification and approval, have approved of a deficient policy.

150.     Further. Before June 10, 2019 the MPD with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted and/or ratified a custom, pattern or practice on the part of its officers. Including Defendant Nicholas J. Torborg and all John Does, of the use of deadly force when none was justified, specifically, the use of neck restraints and hobbles on arrestees who had been handcuffed and in the prone position or otherwise were under officer control.

151.     Wren's injuries were directly and proximately caused by the aforementioned acts and omissions and by the MPD's customs, patterns, and or practices, and the MPD is thereby liable in the amount of 10,000,000 or to be determined by the jury.

152.     Defendant officer Sherry Appledorn and the MPD all conspired against the Plaintiff. The physical evidence shows the Defendant Sherry Appledorn BWC violating Plaintiff 14th Amendment right to Due Process the Defendants conspired among themselves with other Officers, intentionally, maliciously, with reckless disregard for and deliberate indifference to Plaintiff's Constitutional Rights under the Fourteenth Amendment of the United States Constitution.

153.     The Defendant Sherry Appledorn caused Plaintiff combined and punitive damages. Defendants are liable in their official and individual capacities for the damages caused by the Defendants act of conspiracy to deny Plaintiff his Constitution Rights.

154.     Before June 10, 2019, the MPD, with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted and/or ratified

accustom, pattern or practice on the part of intentionally mishandle evidence or property;

155.     Plaintiff injuries were directly and proximately caused by the aforementioned acts and omissions and by the MPD'S customs, patterns, and or practices, and the MPD is thereby liable in the amount of 15,000,000 or to be determined by the jury.

## COUNT V

### Claims for Discriminatory conduct (Minn.rules 6700.0100 subp.26)

156.     All of the foregoing paragraphs are incorporated by reference and realleged as though fully set forth herein.

157.     The Defendants took handcuffs off of a person who had a firearm on him when he asked to have the handcuffs removed but did not take the handcuffs off of Plaintiff when he asked to have the hand cuffs removed after being handcuffed for over 2 hours that was discriminatory conduct.

158.     Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2OOOd et seq, prohibits discrimination based on race by entities that receive federal financial assistance.

159.     The city of Minneapolis and MPD receive federal financial assistance.

160.     Injuries were directly and proximately caused by the aforementioned acts and omissions and by the city's and MPD is thereby liable in the amount of 10,000,000 or to be determined by the jury.

## COUNT VI

### Claims of negligence and neglect by the Defendants.

161.     All of the foregoing paragraphs are incorporated by reference and realleged as thought fully set forth herein.

162.     At no time while Plaintiff was laying on the floor in handcuffs in interview room 108 in the city hall building did Defendants come do a wellness round or check on the Plaintiff to see if Plaintiff was alive and that was negligence Plaintiff could of died of low blood circulation and been dead for hours had not the Plaintiff started

21

kicking the wall to get help and after Plaintiff told a MPD officer that he could not even feel his own arms Defendants still neglected the Plaintiff by leaving the room without at least looking at the Plaintiffs wrist to see it they were swelling or not and that was neglectful on Defendants behave.

163.    James D. Wren realleges and incorporates by reference herein each and every allegation in each paragraph above as though fully set forth herein.

164.    No time while Plaintiff was laying on the floor in handcuffs in interview room 108 in the city hall building did Defendants come do a wellness round or check on Plaintiff to see if Plaintiff was alive and that was negligence Plaintiff could of died of low blood circulation and been dead for hours had not the Plaintiff started kicking the wall to get help and after Plaintiff told a MPD officer that he could not even feel his own arms defendants still neglected the Plaintiff by leaving the room without at least looking at the Plaintiffs wrist to see if they were swelling or not, and that was neglectful on defendants behave Plaintiff now has nerve damage due to being in the hand cuffs so long.

165.    Wren's injuries were directly and proximately caused by the aforementioned acts and omissions and by the city's and MPD is thereby liable in the amount of 10,000,000 or to be determined by the jury.

166.    Plaintiff was left on the ground in the prone position by his self for over 3 minutes and not put in the recovery position by the Defendants and that was neglect on the Defendants and the city's MPD are liable for the negligence of the Defendants.

## COUNT VII

## 14TH AMENDMENT DUE PROCESS VIOLATION/ BRADY V. MARYLAND
### Discharging Petitioner Held Under Civil Process.

167.    James D. Wren realleges and incorporates by reference herein each and every allegation in each paragraph above as though fully set forth herein.

168.    By the actions described above, Defendants MPD, Sherry Appledorn, Nicholas J. Torborg, Sgt Charles Green and John/Jane Doe's under the color of state law, violated and deprived Wren of his clearly established and well settled Civil Rights to be free from fabrication of evidence under the 14th Amendment to the United State Constitution.

22

169.     Defendants subjected Plaintiff to these deprivations of his rights either maliciously or by acting with reckless disregards for whether his rights would be violated.

170.     As A direct and proximate result of the acts and omissions of Defendants Sherry Appledorn, Nicholas J. Torborg, Sgt Charles Green MPD and all John/Jane Doe's (name unknown) Plaintiff suffered injuries, a 369 month sentence, mental anguish, time away from his kids and parents due to Sherry Appledorn failure to disclose exculpatory evidence a 14th Amendments violation to his Due Process and was damaged in the amount of 10,000,000 and punitive damages in the amount of 5,000,000 against Officer Sherry Appledorn individual for malicious misconduct for a total of 15,000,000 or to be determined by the jury.

171.     Wren is entitled to fully recover his cost, including reasonable attorney fees under 42 U.S.C.§1988.

## COUNT VIII

## FABRICATION OF EVIDENCE / DEPRIVATION OF LIBERTY
### (scene tampering and false narrative)

172.     All of the foregoing paragraphs are incorporated by reference and realleged as thought fully set forth herein.

173.     By the action described above, Defendants MPD, Sherry Appledorn, Nicholas J. Torborg, Sgt Charles Green and all John/Jane doe's under the color of state law, deprived Plaintiff of liberty when the Defendant Sherry Appledorn moved the firearm from one location to another location with no gloves on and did not log the firearm in evidence to be tested, checked for fingerprints, DNA and to see if it was fired the night of June 10, 2019 this act alone violated the Due Process rights of United States Constitution.

174.     Plaintiff suffered loss of liberty, damages and injuries for which he is entitled to compensatory damages in the combined amount of 10,000,000 (ten million) and punitive damages for 5,000,000 (5million) a total of 15,000,000. The defendant's acts were intentional, malicious, deliberate, reckless, wanton, and/or cruel, such as to justify an award combined of compensatory and punitive damages to Plaintiff. All Defendants: as a direct and proximate result of Defendant's acts, against Plaintiff.

175.     Wren is entitled to fully recover his costs, including reasonable attorney's fees 42 U.S.C §1988.

23

## COUNT IX

## MISCONDUCT OF PUBLIC OFFICER OR EMPLOYEE 609.43 (1),(2),(3)

176.    All of the foregoing paragraphs are incorporated by reference and realleged as thought fully set forth herein.

177.    (1) Intentionally fails or refused to perform a known mandatory, nondiscretionary ministerial duty of officer or employment within the time or in the manner required by law; or (2) in the capacity of such officer or employee, does an act knowing it is in excess of lawful authority or knowing it is forbidden by law to be done in that capacity; or (3) under pretense or color of official authority intentionally and unlawfully injures another in the other's person, property, or rights or.

178.    Defendant Officer Sherry Appledorn action on the said night of June 10, 2019 was misconduct and meets 609.43 (1), (2), (3) please watch the Defendants own exhibit A video and the courts will see an act that is a crime in Minnesota or any other jurisdiction.

179.    Plaintiff suffered loss of liberty, damages and injuries for which he is entitled to compensatory damages in the combined amount of 10,000,000 (ten million) and punitive damages for 5,000,000 (5million) a total of 15,000,000. The defendant's acts were intentional, malicious, deliberate, reckless, wanton, and/or cruel, such as to justify an award combined of compensatory and punitive damages to Plaintiff. All Defendants: as a direct and proximate result of Defendant's acts, against Plaintiff.

180.    Wren is entitled to fully recover his costs, including reasonable attorney's fees 42 U.S.C §1988.

## COUNT X

## OBSTUCTING LEGAL PROCESS; 609.50 (1), (2)

181.    All of the foregoing paragraphs are incorporated by reference and realleged as thought fully set forth herein.

182.    Defendant Officer Sherry Appledorn acts on June 10, 2019 obstructed Plaintiff legal process and violated Plaintiff Due Process right guaranteed to him by the U.S Constitution, Sherry Appledorn act which has taking place afterward

24

Plaintiff lawful imprisonment grants the discharging of Petitioner held under civil process and judgement for a total of 15,000,000 or to be determined by the jury.

183.     Plaintiff suffered loss of liberty, damages and injuries for which he is entitled to compensatory damages in the combined amount of 10,000,000 (ten million) and punitive damages for 5,000,000 (5million) a total of 15,000,000. The defendant's acts were intentional, malicious, deliberate, reckless, wanton, and/or cruel, such as to justify an award combined of compensatory and punitive damages to Plaintiff. All Defendants: as a direct and proximate result of Defendant's acts, against Plaintiff.

184.     Wren is entitled to fully recover his costs, including reasonable attorney's fees 42 U.S.C §1988.

## PRAYER FOR RELIEF

Wherefore, plaintiff James D. Wren request the following relief:

A.  An award of compensatory damages to Plaintiff James D. Wren and against Defendants, in the above combined sum amount (10 million) or to be determined at trial.

B.  An award for punitive damages to Plaintiff James D. Wren and against Defendants, in an amount of (10 million) or to be determined at trial.

C.  An order for injunctive relief against Defendants and their employees from retaliating against Plaintiff James D. Wren, or those representing Plaintiff in this case if a lawyer picks up the case.

D.  An award of reasonable costs and attorney's fees pursuant to 42 U.S.C. 1988 or any other applicable law.

E.  Any other relief to which Plaintiff is entitled.

WHEREFORE, Plaintiff James D. Wren prays for judgment as follows:

185.     That this court find that Defendants committed acts and omissions violating the United State Constitution, actionable under 42 U.S.C. §1983. And Title VI of the Civil Rights Act;

186.     As to count I, a money judgment against Defendants MPD, Nicholas J. Torborg and all John Does for compensatory damages and punitive damages for

25

10,000,000 or in an amount to be determined by the jury together with cost, including reasonable attorneys' fees under 42 U.S.C §1983, and prejudgment interest;

187.     As to count II, a money judgment against the Defendants MPD, Nicholas J. Torborg, and all John Does, for compensatory damages and punitive damages for 10,000,000 or in an amount to be determined by the jury.

188.     As to count III, a money judgment against the Defendants MPD, Nicholas J. Torborg, and all John Does, for compensatory damages and punitive damages for 10,000,000 or in an amount to be determined by the jury.

189.     As to count IV, a money judgment against Defendants MPD, Nicholas J. Torborg, and all John Does for compensatory damages and punitive damages for 10,000,000 or in an amount to be determined by the jury together with cost, including reasonable attorneys' fees under 42 U.S.C §1988 and prejudgment interest;

190.     As to count V, a money judgment against Defendants MPD, Nicholas J. Torborg, and all John Does for compensatory damages and punitive damages for 10,000,000 or in an amount to be determined by the jury together with cost, including reasonable attorneys' fees under 42 U.S.C §1988 and prejudgment interest;

191.     As to count VI, a money judgment against the Defendants MPD, Nicholas J. Torborg, and all John Does, for compensatory damages and punitive damages for 10,000,000 or in an amount to be determined by the jury.

192.     As to count VII, a money judgment against the Defendants MPD, Nicholas J. Torborg, and all John Does, for compensatory damages and punitive damages for 10,000,000 or in an amount to be determined by the jury.

193.     For an order mandating changes in the policies and procedures of the Minneapolis Police Department requiring, among other things, policies and training measures in the proper use of restraint techniques and the risks of positional asphyxia, the proper reporting of use of force, and the obligation to intervene when observing the for such other and further relief as this court may deem just and equitable.

26

194.     As to count IV a money judgement against Defendants MPD, Sherry Appledorn, Nicholas J. Torborg, Sgt Charles Green, Craig Brown and all John/Jane Does for a total of 15,000,000 or amount to be determined by the jury together with cost, including attorney fees under 42 U.S.C. §1988.

195.     As to count VI a money judgement against Defendants MPD, Sherry Appledorn, Nicholas J. Torborg, Sgt Charles Green, Craig Brown and all John/Jane Does for a total of 15,000,000 or amount to be determined by the jury together with cost, including attorney fees under 42 U.S.C. §1988.

196.     As to count VII a money judgement against Defendants MPD, Sherry Appledorn, Nicholas J. Torborg, Sgt Charles Green, Craig Brown and all John/Jane Does for a total of 15,000,000 or amount to be determined by the jury together with cost, including attorney fees under 42 U.S.C. §1988.

197.     As to count VIII though the original imprisonment was lawful, yet, by some act, omission, or event which has taking place afterward, the person is entitled to be discharged therefore after the actions of Defendant Sherry Appledorn Plaintiff is asking for his sentence to be set aside, free of liberty and a judgment of 15,000,000 or to be determined by the jury together with cost, including attorney fees under 42 U.S.C §1988.

198.     As to count IX though the original imprisonment was lawful, yet, by some act, omission, or event which has taking place afterward, the person is entitled to be discharged therefore after the actions of Defendant Sherry Appledorn Plaintiff is asking for his sentence to be set aside, free of liberty and a judgment of 15,000,000 or to be determined by the jury together with cost, including attorney fees under 42 U.S.C §1988.

199.     As to count X though the original imprisonment was lawful, yet, by some act, omission, or event which has taking place afterward, the person is entitled to be discharged therefore after the actions of Defendant Sherry Appledorn Plaintiff is asking for his sentence to be set aside, free of liberty and a judgment of 15,000,000 or to be determined by the jury together with cost, including attorney fees under 42 U.S.C §1988.

## INJUNCTIVE RELIEF

200.     For an order mandating changes in the policies and procedures of the Minneapolis Police Department requiring, among other things, policies and training measures in the proper use of restraint techniques and the risks of positional asphyxia, the proper reporting of use of force, and the obligation to intervene when

observing the unlawful use of force by other officers, and further relief as this court may deem just and equitable.

201.    For an order mandating changes in the policies and procedures of the Minneapolis Police Department requiring, among other things, policies and training measures in the proper use of evidence booking and handling, and the obligation to intervene when observing the unlawful use of tampering with evidence by other officers, and requiring MPD to implement bodycam/evidence reforms.

202.    For such other and further relief as this court may deem just and equitable.

## JURY TRIAL DEMANDED

James D. Wren hereby demands a jury trial of all issues properly triable to a jury

DATED: August 9, 2025,

/s/ James D. Wren
James D. Wren #238420
Pro-se Plaintiff
MCF- Stillwater prison
970 Pickett St. No
Bayport, MN 55003

I declare (or certify, verify, or state) under the penalty of perjury under the laws of the United States of America the foregoing is true and correct to the best of my knowledge and understanding. 28 U.S.C. §1746.

28